ACCEPTED
04-16-00424-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/2/2016 11:56:14 AM
KEITH HOTTLE
CLERK

No. 04-16-00424-CV

IN THE FOURTH
COURT OF APPEALS AT
SAN ANTONIO, TEXAS

In re RPH CAPITAL PARTNERS, LP,

Relator

Original Proceeding from the 57th Judicial District Court, Bexar County, Texas,
Cause No. 2016-CI-05251, the Honorable Antonia Arteaga, Presiding

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

**Christopher D. Kratovil**
Texas Bar No. 24027427
Email: ckratovil@dykema.com
**Kristina M. Williams**
Texas Bar No. 24078303
Email: kwilliams@dykema.com
**Adam Nunnallee**
Texas Bar No. 24057453
Email: anunnallee@dykema.com
**DYKEMA COX SMITH**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

**Phyllis Speedlin**
Texas Bar No. 18906100
Email: pspeedlin@dykema.com
**DYKEMA COX SMITH**
Weston Centre
112 E. Pecan Street
Suite 1800
San Antonio, TX 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

**Andy Taylor**
State Bar No. 19727600
Email: ATaylor@AndyTaylorLaw.com
**ANDY TAYLOR & ASSOCIATES, P.C.**
2668 Highway 36S, #288
Brenham, Texas 77833
(713) 222-1817 – Telephone
(713) 222-1855 – Facsimile

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

ARGUMENT IN REPLY ...................................................................................1

    I.       INTRODUCTION AND SUMMARY OF ARGUMENT IN REPLY. ......................1

    II.     THE PERIDOT PARTIES WAIVED THEIR RULE 245 ARGUMENT. ..............4

          A.     This Court's November 2015 holding in Templeton controls and vitiates the Peridot Parties' Rule 245 argument...................4

          B.     The restricted appeal case law invoked by the Peridot Parties' to escape Templeton is inapplicable..............................8

    III.    THE PERIDOT PARTIES CONTINUE TO OFFER NO EXPLANATION FOR THEIR FAILURE TO APPEAR FOR TRIAL, AND THIS IS FATAL TO THEIR BILL OF REVIEW. ...................................................................12

          A.     This is a Bill of Review, Not a Motion for New Trial..............12

          B.     Even if Analyzed as a Motion for New Trial, the Peridot Parties Still Failed to Carry their Burden of Proof for Summary Judgment, Failing to Present Any Evidence At All on Three Different Elements...............................................14

    IV.    EQUITY AND SOUND PUBLIC POLICY PRECLUDE GIVING THE PERIDOT PARTIES A "MULLIGAN" AND SETTING ASIDE THE DEFAULT JUDGMENT ON THIS RECORD.................................................21

CONCLUSION AND PRAYER ..........................................................................23

CERTIFICATE OF COMPLIANCE.....................................................................26

CERTIFICATE OF SERVICE ............................................................................27

CERTIFICATION AND VERIFICATION..............................................................28

# TABLE OF AUTHORITIES

## CASES

*Abend v. Fed. Nat'l Mortg. Ass'n*, 466 S.W.3d 884
(Tex. App.—Houston [14th Dist.] 2015, no pet) ...........................................7

*Alexander v. Lynda's Boutique*, 134 S.W.3d 845
(Tex. 2004) ...........................................................................................9

*Balogh v. Ramos*, 978 S.W.2d 696
(Tex. App.—Corpus Christi 1998, pet. denied) ......................................7, 16

*Chapa v. Wirth*, 343 S.W.2d 936
(Tex. App.—Eastland 1961, no writ) .........................................................13

*Conrad v. Orellana*, 661 S.W.2d 309
(Tex. App.—Corpus Christi 1983, no writ) ...............................................13

*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124
(Tex. 1939) ................................................................................. *passim*

*Custom-Crete, Inc. v. K-Bar Servs.*, 82 S.W.3d 655, 659
(Tex. App.--San Antonio 2002, no pet.).............................................. 11, 17

*Dolgencorp of Texas, Inc. v. Lerma*, 288 S.W.3d 922
(Tex. 2009) .........................................................................................18

*Eastin v. Dial*, 288 S.W.3d 491
(Tex. App.—San Antonio 2009, pet. denied)............................................2, 12

*In re Parker*, 20 S.W.3d 812
(Tex. App.–Texarkana 2000, no pet.).................................................. *passim*

*In the Interest of Sadberry*, No. 06-01-00098-CV, 2009 Tex. App.
LEXIS 3000, *7 (Tex. App.—Texarkana April 30, 2002, pet. denied)........11

*Ivey v. Ivey*, No. 05-07-01311-CV, 2009 Tex. App. LEXIS 3207, *7
(Tex. App.—Dallas May 12, 2009, pet. denied) .........................................11

*Padilla v. Comm'n for Lawyer Discipline*, 87 S.W.3d 624
(Tex. App.—San Antonio 2002, pet. Denied)..............................................7

*Peralta v. Heights Med. Ctr.*, 485 U.S. 80 (1988).....................................12

*Petro-Chemical Transp., Inc. v. Carroll*, 514 S.W.2d 240
(Tex. 1974) .................................................................. *passim*

*Sutherland v. Spencer*, 376 S.W.3d 752
(Tex. 2012) ................................................................... 15, 18

*Templeton Mortg. Corp. v. Poenisch*, No. 04-15-00041-CV, 2015 Tex. App.
LEXIS 11813, *5 (Tex. App.—San Antonio Nov. 18, 2015, no pet.) ........ *passim*

**RULES**

Tex. R. Civ. P. 245........................................................................ *passim*

Tᴇx. R. Aᴘᴘ. P. 26.1(c) .......................................................................8

iii

This Court should grant Relator RPH Capital Partners, LP's ("RPH") Petition for Writ of Mandamus to correct the Honorable Antonia Arteaga's ("Judge Arteaga" or the "District Court") clear abuse of discretion in awarding summary judgment to Peridot Joint Venture, Millennium Exploration Company, LLC, and Richard Monroy ("the Peridot Parties"), and thereby granting their equitable Bill of Review and setting aside the Default Judgment.

## I.     Introduction and Summary of Argument in Reply.

The summary judgment evidence presented in the District Court conclusively established that the Peridot Parties' lead counsel in Cause Number 2015-CI-17142, *RPH Capital Partners, LP v. Peridot Joint Venture, et al* ("the Underlying Proceeding") was served with and otherwise received notice—both actual and constructive—of the trial date in the Underlying Proceeding.  Despite receiving this notice of the trial setting, counsel for the Peridot Parties inexplicably failed to appear or to move for a continuance of the trial date or to otherwise object to it.  Remarkably, the Peridot Parties' Response to RPH's Petition for Writ of Mandamus (the "Response") *still* does not offer any coherent explanation or excuse for Plaintiffs' failure to appear for a trial of which they had notice.

Instead of attempting to explain *why* the Peridot Parties failed to appear at the December 14, 2015 trial setting, the Peridot Parties' Response instead focuses

1

heavily on the purported impropriety of that trial setting under Texas Rule of Civil Procedure 245 ("Rule 245"), which mandates a minimum of 45 days' notice of a trial.  However, by failing to move to continue or to assert any objection to a trial setting *of which they had __38__ day actual notice*, the Peridot Parties waived their argument under Rule 245.  Contrary to the Response, Due Process only requires that the Peridot Parties had reasonable notice of the trial date—which they received—and were given the opportunity to object to that date, which they did not do.  Neither Due Process nor Rule 245 gives a party—particularly a party represented by capable counsel from a large and prestigious Dallas law firm—license to "sit on its hands" for 38 days and flatly ignore a trial setting that it has received multiple notices of.  In short, Rule 245 is neither self-executing nor unwaivable, and desperate cries of "Due Process" should not shield a party or its law firm when they inexplicably ignore a trial setting that they had reasonable notice of.

The Peridot Parties' ultimate relief should come from the counsel who failed them, not from an equitable bill of review where they cannot possibly satisfy—and certainly have not satisfied on this summary judgment record—the "unmixed with any negligence or fault" element of the bill of review test.[1]

---

[1] *See Petro-Chemical Transp., Inc. v. Carroll*, 514 S.W.2d 240, 244-46 (Tex. 1974); *Eastin v. Dial*, 288 S.W.3d 491, 497-98 (Tex. App.—San Antonio 2009, pet. denied) (holding that a bill of review petitioner must plead and prove that the taking of the default judgment was "unmixed with any negligence or fault of his own.").

2

The Peridot Parties know they can never satisfy the legal standard for a Bill of Review, and so they instead urge this Court to apply the more lenient standard that governs a motion for new trial. The Peridot Parties are incorrect that the *Craddock* standard for a motion for new trial should apply here, as their failure to monitor ongoing and hotly contested litigation resulted not only in their failure to appear for trial but also their subsequent failure to timely file a motion for new trial. But even if the Peridot Parties' still unexplained failure to appear for trial is evaluated not as an equitable bill of review but rather under the more lenient *Craddock* standard, the Peridot Parties, on this summary judgment record, still failed to establish ***three*** of the required elements for a new trial. First, and as noted, the Peridot Parties failed to present any evidence as to why they failed to appear for a trial setting of which they had notice, making it impossible for them to establish that their still unexplained abandonment of this case was something other than "conscious indifference." Second, the Peridot Parties also failed to offer any evidence as to what their "meritorious defense" to RPH's underlying claims may be. Third and finally, the Peridot Parties failed to present any evidence that RPH would not suffer prejudice as the result of the setting aside of the Default Judgment, and the only evidence in the record shows that RPH will suffer prejudice—in the form of substantial attorneys' fees incurred taking and defending

3

the Default Judgment, as well as the substantial delays endured in the resolution of their underlying claims—if the Default Judgment is set aside.

In the final measure, much more is required in order to secure an equitable bill of review than is in the record here. The Peridot Parties' counsel ignored a trial setting, and the Peridot Parties' remedy is an action against their counsel in the Underlying Proceeding, Kane Russell, not an equitable bill of review. Stated another way, there is simply no way the Peridot Parties can satisfy the "unmixed with any negligence or fault" requirement for a bill of review. Against this backdrop and on this record, the District Court abused its discretion in granting summary judgment in favor of the Peridot Parties and against Relator RPH, and thereby granting the Bill of Review and setting aside the Default Judgment. This Court should correct that clear abuse of discretion via mandamus, and should reject the Peridot Parties' Bill of Review.

## II.   The Peridot Parties Waived Their Rule 245 Argument.

**A.**   This Court's November 2015 holding in *Templeton* controls and vitiates the Peridot Parties' Rule 245 argument.

Judge Arteaga erred in granting summary judgment in favor of the Peridot Parties because, as held by this Court just nine months ago, "a party ***waives*** its Rule 245 complaint by ***failing to take action*** when it 'receives some, but less than forty-five days', notice.'" *Templeton Mortg. Corp. v. Poenisch*, No. 04-15-00041-CV, 2015 Tex. App. LEXIS 11813, *5 (Tex. App.—San Antonio Nov. 18, 2015,

4

no pet.) (emphasis added). *Templeton* confirms that Rule 245 can be waived by a party's inaction. Contrary to the Peridot Parties' argument, in *Templeton* this Court explicitly and expressly ruled "that Templeton ***failed to preserve its Rule 245 notice complaint***" because "***despite receiving notice, Templeton neither appeared at the hearing nor raised any pretrial objection to a lack of sufficient notice under Rule 245***." *Id*. at \*5 (emphasis added; citations omitted). This Court's language could not be more clear, but the Peridot Parties choose to avoid this core section of the *Templeton* holding in their Response.

Instead of engaging with *Templeton*'s on-point core holding from just last November, the Peridot Parties instead focus upon this Court's alternate and secondary reasons for upholding the trial court's default judgment in that case. *Id*. at \*5-6. In addition to finding that Rule 245 can be waived by a party's inaction, *Templeton* also offered alternative reasons for affirming the default judgment in that case, noting that "even if Templeton had preserved this [Rule 245] complaint for review, we hold that does not entitle Templeton to a reversal." *Id*. at \*6. But the Peridot Parties misunderstand the relevance of these alternative grounds for affirmance of the default judgment in *Templeton*. Arguing against *Templeton*'s application to this case, the Peridot Parties incorrectly state "[t]he court made clear in *Templeton* that Rule 245 did not apply to its facts because at the time of the notice in that case, Templeton's pleadings had been stricken and it was no longer a

5

contested case." (Resp. at 4). This is incorrect, as this Court recognized that the *Templeton* defendant was given notice of trial, albeit less than the 45 days' notice required by Rule 245. *See Templeton*, 2015 Tex. App. LEXIS 11813, at *4-5.

Contrary to the Peridot Parties' argument, the *Templeton* trial court did not strike the defendant's pleadings prior to notice of trial being given, but struck the defendant's pleadings on the day of the default judgment hearing, and in response to the defendants failure to appear. *Id*. at *2-3. As such, *Templeton* was a contested case at the time notice of trial was served on the defendant, but not at the time the default judgment was entered. Just so here.

In short, this Court's offering two alternate reasons in *Templeton* for affirming the default judgment other than waiver of Rule 245 notice does not make that precedent any less dispositive of the waiver issue in the current case. Here, as in *Templeton*, the Peridot Parties "receive[d] some, but less than forty-five days', notice[,]" and waived their right to make any objection under Rule 245 by failing to appear. *Id*. at *5. *Templeton* controls and should have led the District Court to reject the Peridot Parties' Rule 245 argument and to deny their equitable bill of review.

Nor is the core holding of *Templeton* mere "dicta" as the Peridot Parties now suggest. Instead, *Templeton* stands squarely for the proposition that the 45-day notice period of Rule 245 is not a constitutional requirement, and that all that is

6

required to satisfy Due Process is reasonable notice.  *Templeton* is hardly alone. For example, Texarkana Court of Appeals has similarly noted that "[a] party could, in theory, waive a complaint by failing to take action when the party receives some, but less than forty-five days', notice." *In re Parker*, 20 S.W.3d 812, 818 (Tex. App.–Texarkana 2000, no pet.).  The Corpus Christi Court of Appeals has offered equivalent  analysis, concluding that reasonable notice is all that is required to satisfy Due Process.  *See Balogh v. Ramos*, 978 S.W.2d 696, 699 (Tex. App.—Corpus Christi 1998, pet. Denied).  Contrary to the Peridot Parties' argument, while *Templeton* is the most recent and most relevant decision, there is ample Texas authority for the proposition that Due Process is fully satisfied by reasonable notice trial, and that the 45-day requirement of Rule 245 is not somehow synonymous with Due Process.  *See  also Abend v. Fed. Nat'l Mortg. Ass'n*, 466 S.W.3d 884, 885 (Tex. App.—Houston [14th Dist.] 2015, no pet); *Padilla v. Comm'n for Lawyer Discipline*, 87 S.W.3d 624, 626 (Tex. App.—San Antonio 2002, pet. denied).

Here, as fully established in RPH's Petition, there can be no doubt that the Peridot Parties received not only reasonable notice of the trial setting, **but *multiple forms*** of reasonable notice starting 38 days before the trial setting.  First, the TI Order itself—which Mr. McClure indisputably received—recited the trial date of December 14, 2015.  (M.R. 41-46).  Second, Mr. McClure drafted the Protective

7

Order, which specifically referenced and incorporated the TI Order containing the trial date. (M.R. 530-36). Third, Mr. McClure received yet another form of notice of the trial setting, as RPH served the Peridot Parties with documents in the Dallas Proceeding containing the Bexar County trial date. (M.R. 440, 520, 549). Consistent with *Templeton*, *In re Parker*, and the other foregoing authorities, these multiple reasonable notices—the first of which was received by Mr. McClure 38 days prior to the trial setting—satisfied Due Process.

B.    **The restricted appeal case law invoked by the Peridot Parties' to escape *Templeton* is inapplicable.**

Desperate to escape this Court's nine month old and directly on-point holding in *Templeton*, the Peridot Parties parade a series of restricted appeal cases for the general proposition that a default judgment can be set aside on restricted appeal if the restricted appellant did not received adequate notice of the trial under Rule 245. But the cases invoked by the Peridot Parties are inapplicable for several reasons.

**1. This is a Bill of Review, Not a Restricted Appeal.**

First, this is not a restricted appeal but rather an equitable bill of review. Indeed, although they acknowledge that they received notice of the Default Judgment well within the six month window to file a restricted appeal under TEX. R. APP. P. 26.1(c), the Peridot Parties *failed to file a restricted appeal*. An equitable bill of review and a restricted appeal are governed by very different legal

8

standards. *Compare* TEX. R. APP. P. 26.1(c) and *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004) (restricted appeal standard) with *Petro-Chemical Transp., Inc. v. Carroll*, 514 S.W.2d 240, 244-46 (Tex. 1974) (bill of review standard). The record is unclear as to why the Peridot Parties filed a bill of review—a new lawsuit in which the burden is on them as the bill or review plaintiffs—rather than pursuing the less difficult remedy afforded by restricted appeal.

Importantly, and in contrast to a bill of review, the appellant in a restricted appeal is *not* required to show that the default judgment was "unmixed with any negligence or fault of his own." *Id.* In contrast to a restricted appeal, the plaintiff in a bill of review action—here, the Peridot Parties—must plead and prove that the taking of the default judgment was "unmixed with any negligence or fault of his own." *Id.* Thus, in this bill of review proceeding, the negligence of the Peridot Parties and their counsel in failing to take *any* action in response to a trial setting of which they had reasonable—38 days—notice is the central inquiry before the Court in this bill of review. Perhaps the result here would be different if the Peridot Parties had filed a restricted appeal—as they had the option to—but they did not. As such, the bill of review standard applies instead of the restricted appeal standard, and the Peridot Parties have failed to offer evidence that the Default

9

Judgment did not result from the fault of their counsel, Mr. McClure and his large Dallas law firm Kane Russell.

## 2. Due Process is Satisfied by Reasonable Notice of Trial.

Second, and in sharp contrast to the litany of restricted appeal cases invoked in the Response, the Peridot Parties are not a *pro se* party to a small divorce in which they received no notice or minimal notice of trial. Instead, the Peridot Parties are participants in sophisticated commercial litigation in which they are represented by a large and prestigious law firm. Consistent with this Court's holding in *Templeton*, it simply cannot be the law that a sophisticated litigant represented by capable and experienced counsel has a right to "sit on its hands" and do nothing where, as here, it receives reasonable notice of a trial setting—albeit slightly less than the full 45 days required by Rule 245. As the Response reluctantly concedes, the Peridot Parties received at least 38 days' notice of the trial setting—yet they nonetheless failed to move to continue the trial date, object to the setting, or show up.

Contrary to the central argument made by the Peridot Parties in the Response, Due Process is fully satisfied where, as here, a party receives reasonable notice of trial. *In re Parker*, 20 S.W.3d 812, 818 (Tex. App.—Texarkana 2000, no pet.) (holding that "[d]ue process requires only actual or constructive notice reasonable under the circumstances."); *see also, e.g., Ivey v. Ivey*, No. 05-07-

10

01311-CV, 2009 Tex. App. LEXIS 3207, *7 (Tex. App.—Dallas May 12, 2009, pet. denied) (citing *In re Parker*); *In the Interest of Sadberry*, No. 06-01-00098-CV, 2009 Tex. App. LEXIS 3000, *7 (Tex. App.—Texarkana April 30, 2002, pet. denied) ("Due process only requires reasonable notice under the circumstances.") (citing, e.g., *Peralta v. Heights Med. Ctr.*, 485 U.S. 80 (1988)). Indeed, "Rule 245 provides a notice requirement that goes beyond the requirements of due process." *Id.* at 818; *see also Custom-Crete, Inc. v. K-Bar Servs.*, 82 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.). Consistent with *Templeton*, and in contrast to central argument in the Response, neither Due Process nor Rule 245 affords parties the sweeping right to "sit on their hands" in response to a trial setting of which they have reasonable notice. This principle is all the more true where, as here, the party improperly "sitting on its hands" is represented by sophisticated counsel from a large law firm.

To reiterate, ***none*** of the cases invoked by the Peridot Parties in their Response are bill of review cases where the party challenging a post-answer default judgment had reasonable notice of the trial setting—albeit less than the 45 days' notice required by Rule 245. As such, the Peridot Parties' attempt escape this Court's controlling and only 9-month old precedent in *Templeton* fails. In the final measure, this Court's decision last year in *Templeton* makes clear that where,

11

as here, a party had some notice of a trial setting—albeit less notice than required by Rule 245—there is no right to sit on ones' hands and fail to appear or object.

## III. The Peridot Parties Continue to Offer No Explanation for their Failure to appear for Trial, and this is Fatal to their Bill of Review.

### A. This is a Bill of Review, Not a Motion for New Trial.

Receiving some but less than forty-five days' notice of trial does not relieve the Peridot Parties from meeting the elements required a bill of review. Foremost among these elements is that the Default Judgment was taken "unmixed with any negligence or fault" of the Peridot Parties or their counsel. *Petro-Chemical Transp.*, 514 S.W.2d at 244-46; *Eastin*, 288 S.W.3d at 497-98. Insofar as Rule 245 does not convey the right to simply ignore a trial setting that gives reasonable, but less than 45 days, notice of trial, the Peridot Parties *can never satisfy this element* of the bill of review test  Accordingly, the Peridot Parties have no choice but to urge the application of an entirely different legal standard, claiming that their effort to set aside the Default Judgment should not be reviewed as a bill of review but rather as a motion for new trial under *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939).

The Peridot Parties are wrong, as their counsel received but ignored notice of the trial, did not show up for that trial, and evidently did not check the docket sheet for the case for multiple months after the trial setting, thereby missing the entry of the Default Judgment and missing the chance to file a motion for new trial

12

or appeal. Stated another way, the only thing that prevented the Peridot Parties from filing a timely motion for new trial was their extended failure to monitor an active and once hotly contested case following a trial setting of which they had notice. The Peridot Parties claim that the clerk failed to send them postcard notification of the entry of Default Judgment against them, but this is ultimately an irrelevant distraction from their own failure to participate in and monitor the case; having received reasonable notice of the trial setting, the Peridot Parties not only failed to object or participate in trial, they also failed to follow developments in the case after the trial setting they ignored. In other words, the Peridot Parties contend that the clerk's purported failure to send them a postcard somehow released their counsel from their continuing obligation, as a matter of law, to monitor the Underlying Proceeding. *See Conrad v. Orellana*, 661 S.W.2d 309 (Tex. App.—Corpus Christi 1983, no writ); *Chapa v. Wirth*, 343 S.W.2d 936 (Tex. App.—Eastland 1961, no writ). This cannot be the law, as attorneys cannot cavalierly transfer their most fundamental professional obligations to court staff. The Peridot Parties' effort to set aside the Default Judgment must therefore be analyzed under the bill of review standard, not the *Craddock* test for a motion for new trial.

**B.** **Even if Analyzed as a Motion for New Trial, the Peridot Parties Still Failed to Carry their Burden of Proof for Summary Judgment, Failing to Present Any Evidence At All on Three Different Elements**.

But even under the Peridot Parties' own theory of the case, they must still satisfy the *Craddock* factors for a motion for new trial. Yet, having argued that they must meet the standard for a motion for new trial, the Peridot Parties failed to present ***any*** summary judgment evidence before Judge Arteaga on multiple *Craddock* factors. As the party seeking to set aside the Default Judgment and moving for (and receiving) summary judgment, the Peridot Parties had the burden of proof on each of the *Craddock* factors, and the Peridot Parties' Response fails to show how they did this for each factor.

**1.** **The Peridot Parties failed to prove a lack of "conscious indifference."**

First, in their Response, the Peridot Parties do not direct the Court to any evidence in the summary judgement evidence demonstrating that their still-unexplained failure to appear for trial was not intentional or the result of "conscious indifference." On the contrary, the Peridot Parties' failure to appear for a trial setting of which they indisputably had notice remains entirely unexplained. Indeed, the only explanation the Peridot Parties offered to the District Court on the reasons for their failure to appear is their lead counsel's (Mr. McClure of the Kane Russell firm in Dallas) following statement: "I did not see the inclusion of

14

December 14, 2015 trial setting in the signed order and the date was not docketed by me or my firm." (MR 655, 661). The Peridot Parties offer no better explanation to this Court. (Resp. at 22). This cursory and carefully-worded statement sheds absolutely no light on *why* the Peridot Parties failed to appear for a trial setting of which they had both actual and constructive notice, including multiple forms of written notice. See *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) ("[T]he critical question in any default judgment [is]: 'Why did the defendant not appear?'"). "[F]orgetfulness alone is [not] sufficient to satisfy the first Craddock element." *Id*. Based on the limited summary judgment evidence submitted by the Peridot Parties, there is no evidence that their failure to appear was, at best, the product of Mr. McClure's "forgetfulness." As a matter of Texas law, that is simply not enough. *Id*.

Moreover, the Peridot Parties not only failed to appear for trial on December 14, 2015, they also "went dark" for an extended period *prior* to that trial setting. In their Response, the Peridot Parties fault RPH's lead trial counsel, Andy Taylor, for informing Judge Arteaga at the December 14 trial setting that he had received no communications from them in 30 days, but it had been 24 days since he received any communications—written or verbal—from counsel to the Peridot Parties. (M.R. 438-42). Moreover, the Peridot Parties continued to remain "dark" for months after the entry of the Default Judgment, reemerging from their still

15

unexplained absence from the case only after RPH commenced enforcement and collection efforts in March 2016. In short, the Peridot Parties did not just miss a trial setting of which they had notice, as they also ignored this case for extended periods both before and after that trial setting.

The insufficiency of the Peridot Parties' explanation of and evidence for failing to appear becomes even more apparent when comparing treatment of similar situations by Texas courts of appeal. In *Balogh*, the Corpus Christi Court of Appeals upheld the ***denial*** of a motion for new trial following a post-answer default judgment because the defendant failed to demonstrate his failure to attend trial was not intentional or the result of conscious indifference. *Balogh v. Ramos*, 978 S.W.2d 696, 699 (Texas App.—Corpus Christi 1998, pet. Denied). The Corpus Christi Court of Appeals noted the defendant provided affidavit evidence that he had no actual notice of the trial setting because he did not receive the docket control order, but offered no explanation for his failure to appear at a docket control conference where the trial date was set, did not deny receiving the plaintiff's request for a docket control conference, and did not contradict the clerk's notes that notice of the conference where the trial date was set was mailed to the defendant. *Id*. Here, the Peridot Parties' conduct is even more egregious than in *Balogh*, as the Peridot Parties admit receiving notice of the trial setting

16

contained in the TI Order but, for reasons left entirely unexplained, they failed to act.

Similar to the defendant in *Balogh*, the Peridot Parties also received notice of the trial setting in other ways because Mr. McClure drafted the Protective Order, which specifically references and incorporates the TI Order containing the trial date. The Peridot Parties' argument in response borders on bizarre: they claim that McClure cannot be held to the contents of the very document he drafted and signed, the TI Order. (Resp. at 22). This cannot be. Moreover, Mr. McClure received yet another form of notice of the trial setting, as RPH served the Peridot Parties with documents in the Dallas Proceeding containing the Bexar County trial date. (M.R. 440, 520, 549).

A careful examination of the reasons for a party's failure to appear at trial is required before relief from a Default Judgment can be granted. In contrast to the Peridot Parties' conduct here, in *Custom Crete*, this Court held a defendant complaining of insufficient notice under Rule 245 did not intentionally fail to appear or exercise conscious indifference because the defendant appeared at trial mistakenly believing a non-attorney could represent the corporation at trial. 82 S.W.3d at 660. Similarly, in *Parker*, the Texarkana Court of Appeals held a defendant that received fourteen days' notice of a trial setting did not act intentionally or with conscious indifference because the defendant sent a letter to

17

the district clerk prior to trial requesting clarification of the trial date and complaining of lack of proper notice.  20 S.W.3d at 819.  Here, the Peridot Parties failed to show for trial and offer no explanation for how they allegedly overlooked multiple instances putting them on notice of the trial date.  All the Peridot Parties have managed to show is that Mr. McClure was, at best, extremely "forgetful," but "forgetfulness alone is [not] sufficient to satisfy the first *Craddock* element." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012).

For these reasons, Judge Arteaga abused her discretion not only by granting the Peridot Parties' motion for summary judgment in the Bill of Review proceeding, but also by denying RPH's cross-motion for summary judgment asking for the denial of the Bill of Review.

### 2. The Peridot Parties failed to present any evidence of a "meritorious defense."

In addition to proving a lack of intentional conduct or conscious indifference, even under the standard for a motion for new trial, the Peridot Parties must also allege and prove that they have a meritorious defense to the underlying case.  *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939).  But the Peridot Parties presented no evidence whatsoever to Judge Arteaga establishing a "meritorious defense."  "Setting up a meritorious defense does not require proof in the accepted sense." *Dolgencorp of Texas, Inc. v. Lerma*, 288 S.W.3d 922, 927-28 (Tex. 2009).  "Rather the motion sets up a meritorious defense if it alleges facts

18

which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits of other evidence providing prima facie proof that the defendant has such a defense." *Id*. at 928.

On this record, the Peridot Parties entirely failed to make mention of RPH's causes of action, what facts constitute a defense thereto, or what defenses those facts support in their briefing to the District Court. Instead, the Peridot Parties only made—and continue to make—the vague and conclusory statement that "a meritorious defense exists." (MR 661). None of the affidavits attached to the motion for summary judgment the Peridot Parties filed in the District Court mentioned any facts related to claims and defenses in the underlying suit and none of the pleadings they attached were verified.

Finally, nothing in the Peridot Parties' Response to this Court clarifies this situation or explains what the "meritorious defense" they would assert against RPH's underlying claims would be. In sum, the Peridot Parties not only did not present sufficient evidence to prevail on summary judgment on the "meritorious defense" element—they failed to present any evidence on this element at all, rendering it an abuse of discretion for Judge Arteaga to grant summary judgment to them and to simultaneously deny it to RPH.

### 3. The Peridot Parties failed to present any evidence that RPH will not be prejudiced.

The Peridot Parties also failed to present any evidence on the "prejudice" factor of the *Craddock* test, and failed to prove that RPH will not suffer prejudice if the Default Judgment is set aside. While the Peridot Parties flatly ignored the prejudice inquiry required by *Craddock*, the record supports that RPH is severely prejudiced by Judge Arteaga's setting aside of the Default Judgment; RPH incurred attorneys' fees and expenses taking the default judgment when the Peridot Parties inexplicably failed to appear for trial on December 14, 2015, in the Underlying Suit. (MR 1127). Moreover, following entry of the Final Judgment, the record reflects that RPH incurred substantial costs and attorney's fees in filing a collection proceeding, serving post-judgment discovery, defending against the current proceeding, and mediating this matter. (MR 1127).

Contrary to both basic equity and customary practice in Bexar County, the Peridot Parties have made no offer to cover the substantial costs and fees incurred by RPH. Again, nothing in the Peridot Parties' Response changes this fact, and the record confirms RPH will suffer prejudice in the form of attorneys' fees and costs incurred as the direct result of the Peridot Parties' failure to appear for a trial setting of which they had notice. Because the only evidence in the summary judgment record shows that RPH will be prejudiced by the setting aside of the Default Judgment, it was an abuse of discretion for Judge Arteaga to grant

20

summary judgment to the Peridot Parties and to deny it to RPH in the Bill of Review proceeding.

## IV. Equity and Sound Public Policy Preclude Giving the Peridot Parties a "Mulligan" and Setting Aside the Default Judgment on this Record.

In the final measure, the Peridot Parties are asking this Court to hold that a sophisticated commercial litigant, represented by experienced litigation counsel at a large Dallas law firm, deserves a "mulligan" for failing to appear for (or to object to) a trial setting of which they received multiple written notices and at least 38 days warning. The Peridot Parties are asking the Court to do this without ever providing a coherent explanation as to *why* they failed to appear, and without establishing their lack of fault—or even a lack of conscious indifference. Nor did the Peridot Parties bother introduce into the summary judgment record what their meritorious defense to RPH's underlying claims would be. And, finally, the summary judgment record confirms that the Peridot Parties have failed to even offer to compensate RPH for the attorneys' fees and costs that it incurred as a direct result of the Peridot Parties' failure to appear for trial, meaning that RPH will suffer prejudice if the Default Judgment is set aside.

In addition to failing to present adequate summary judgment evidence to support their equitable Bill of Review, the Peridot Parties are also asking this Court to set aside its own 9-month old decision in *Templeton* and to hold that Rule 245 can never be waived and that parties—even sophisticate parties represented by

21

quality counsel— can "instead sit on their hands" in response to multiple written notices that give some, but less than 45 days, notice of a trial setting. This Court should decline this invitation to reverse *Templeton*, and should refuse to give a blanket license to lawyers to simply ignore trial settings that give some but less than 45 days' notice of trial.

Although default judgment is an undeniably harsh result, Judge Arteaga abused her discretion by granting summary judgment to the Peridot Parties on their Bill of Review despite the fact that, on this record, as they did not come anywhere close to carrying their burden on summary judgment. Indeed, upon examination Judge Arteaga's abuse of discretion becomes obvious because, as explained *supra*, the Peridot Parties failed to offer *any* summary judgment evidence on multiple elements where, as a matter of law, they had the burden of proof—and this is equally true regardless if this challenge to the Default Judgment is evaluated under the bill of review standard (as it should be) or under the motion for new trial standard. Indeed, it was not only an abuse of discretion for Judge Arteaga to grant summary judgment on the Bill of Review to the Peridot Partiers, but on this record it was equally an abuse of discretion for her to deny RPH's cross-motion for summary judgment against the Bill of Review.

The admitted harshness of default judgment is mitigated here because the Peridot Parties do have a proper and adequate remedy, but it is not an equitable bill

22

of review, rather it is against the counsel who failed to appear for trial setting of which they had notice, and who still refuse to explain that failure.

## CONCLUSION AND PRAYER

This Court has consistently recognized that mandamus relief is available where, as here, a trial court abuses its discretion in erroneously granting a bill of review. As shown in Relator's Petition for Writ of Mandamus and herein, the District Court abused its discretion in granting, via summary judgment, the Real Parties in Interest's Bill of Review.

For all these reasons, Relator RPH Capital Partners, LP respectfully requests its Petition for Writ of Mandamus be granted, and that this Honorable Court of Appeals issue a Writ of Mandamus commanding the Respondent, the Honorable Antonia Arteaga, to: reverse, alter and amend her Order of June 9, 2016 to reinstate the Final Judgment in Cause Number 2015-CI-17142 and styled *RPH Capital Partners, LP v. Peridot Joint Venture, et al.* in the Bexar County 57th District Court, Bexar County, Texas, as well as to reinstate all abstracts of judgment and writs of execution issued to collect on the Final Judgment. In short, RPH requests that this Court grant summary judgment for RPH and restore the post-answer Default Judgment that Judge Arteaga set aside via her erroneous grant of the Bill of Review. The Default Judgment should be left undisturbed, with full enforcement and execution permitted.

23

RPH also requests such additional relief as it is entitled to in law or in equity.

Respectfully submitted,

By: */s/ Christopher D. Kratovil*
**Christopher D. Kratovil**
Texas Bar No. 24027427
Email: ckratovil@dykema.com
**Kristina M. Williams**
Texas Bar No. 24078303
Email: kwilliams@dykema.com
**Adam Nunnallee**
Texas Bar No. 24057453
Email: anunnallee@dykema.com
**DYKEMA COX SMITH**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

And

**Phyllis Speedlin**
Texas Bar No. 18906100
Email: pspeedlin@dykema.com
DYKEMA COX SMITH
Weston Centre
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

24

And

**Andy Taylor**
State Bar No. 19727600
Email: ATaylor@AndyTaylorLaw.com
ANDY TAYLOR & ASSOCIATES, P.C.
2668 Highway 36S, #288
Brenham, Texas 77833
(713) 222-1817 – Telephone
(713) 222-1855 – Facsimile

**ATTORNEYS FOR
RPH CAPITAL PARTNERS, LP**

**CERTIFICATE OF COMPLIANCE**

I certify that this Reply in Support of Petition for Writ of Mandamus complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 5,752 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

DATED:     August 2, 2016

CERTIFIED BY: */s/ Kristina M. Williams*
                         Kristina M. Williams
                         Counsel for Relator RPH Capital Partners, LP

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply in Support of Petition for Writ of Mandamus was served upon the following counsel via this Court's electronic filing system in accordance with the Texas Rules of Appellate Procedure on August 2, 2016.

/s/ Kristina M. Williams
Kristina M. Williams

# CERTIFICATION AND VERIFICATION

STATE OF TEXAS     §
          §
COUNTY OF DALLAS    §

BEFORE ME, the undersigned notary public, on this day personally appeared Adam Nunnallee, who being duly sworn, verified and stated that he is an attorney of record for RPH Capital Partners, LP and that he has reviewed the Relator's Reply in Support of Petition for Writ of Mandamus and that the facts stated within the Reply are within his personal knowledge and are true and correct in all respects, and that the factual statements contained in the Reply are supported by competent evidence included in the Appendix and/or Record.

_____
Adam Nunnallee

SUBSCRIBED AND SWORN TO BEFORE ME this _2nd_ day of August, 2016.

_____
Notary Public

My Commission Expires: 5-19-18

PAULA ELLIOTT
Notary Public, State of Texas
My Commission Expires
05/19/18
Notary ID# 1237731-3

28